JACK DURAN, SBN 221704
DURAN LAW OFFICE
4010 Foothills Blvd., S-103, N.98
Roseville, CA 95747
Telephone: (916) 779-3316
Facsimile: (916) 520-3526
duranlaw@yahoo.com

Attorney for Petitioners:

Ron Napoles, Laurine Napoles, Rick Napoles, Mark Napoles,
James Napoles, Debra Williams, Wade Williams

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## FRESNO DIVISION

| | |
|---|---|
| RONALD NAPOLES,LAURINE NAPOLES, RICK NAPOLES, MARK NAPOLES, JAMES NAPOLES, DEBRA WILLIAMS WADE WILLIAMS, | Case No. |
| | **PETITION FOR HABEAS CORPUS** |
| Petitioners, | |
| v. | Indian Civil Rights Act, 25 U.S.C. § 1303 |
| DESTIN ROGERS, BRIAN PONCHO, EARLEEN WILLIAMS, WILLIAM "BILL" VEGA [BISHOP PAIUTE TRIBAL COUNCIL, IN THEIR INDIVIDUAL CAPACITIES], BISHOP PAIUTE TRIBAL COURT AND TRIBAL COURT JUDGE, BILL KOCKENMEISTER, [N HIS INDIVIDUAL CAPACITY], | |
| Respondents | |

PETITION FOR HABEAS CORPUS

## I. INTRODUCTION

Petitioners hereby petition the Court for a Writ of Habeas Corpus pursuant to the Indian Civil Rights Act ("ICRA"). 25 U.S.C. §§ 1301-1303. Respondents are unlawfully detaining Petitioners by convicting Petitioners of crimes, including "trespass," and otherwise ejecting and restraining them from their family land without due process or equal protection of law.

Respondents are being punished and deprived of liberty and property in retaliation for pursuing recovery of family land assignments that were rightfully assigned to Petitioners through tribal custom, tradition and the mandates of the 1962 Ordinance Governing Assignments on the Bishop, Pig Pine and Lone Pine Reservations (hereinafter, "1962 Ordinance"), the principal document upon which land assignments are governed within the Owens Valley; and the decisions and authority of the Owens Valley Board of Trustees (hereinafter "OVBT"), the governing entity with exclusive authority over recognition, approval and changes of land assignment. The Petitioners have been ordered to vacate the assignments and face criminal sanction, for trespass, which has been ordered by the Court. The punishment Respondents imposed constitutes detention, as contemplated by ICRA.

Petitioners have exhausted tribal remedies by first challenging a Trespass order to the Tribe's Appellate division, the Intra-Tribal Court of Southern California (ITCSC), which reversed the lower court's finding of trespass and remanded the case back to the Tribal Court to determine the underlying status of the land and Bishop Paiute Tribal Council's authority over it. The Tribal court, however, ignored and continues to ignore and take steps to circumvent the Appellate order. The Tribal Court first ordered the case dismissed at the request of the Defendant, Bishop Tribal Council, entering the dismissal with prejudice. Then immediately after

- 1 -

PETITION FOR HABEAS CORPUS

entering the dismissal, Respondents immediately renewed their efforts to punish Petitioners and force them off their land, instituting a variety of threats, citations, and actions.  Additionally, Respondent Kockenmeister entered, sua sponte and ex parte, without trial, evidentiary presentation, or other elements of due process required under ICRA and the laws of the Bishop Paiute Tribe, a Temporary Protection Order (hereinafter "TPO").  The TPO completely restrains Petitioners from entering upon the land, threatens them erroneously with federal criminal prosecution under the Violence Against Women Act (which has no applicability to the underlying facts involved with this case), and denies other fundamental rights wholly unrelated and inappropriate to the nature of the situation.

In an effort to seek relief from the latest round of actions, Petitioners prepared and filed a Petition for Writ of Mandamus for consideration by the Bishop Paiute Appellate Court.  Upon filing it, however, Petitioners were informed that the Council terminated its relationship with the ITCSC following its decision on their earlier trespass action, rendering Petitioners without any other forum or available remedies to challengeRespondents' illegal actions.  Although the Bishop Paiute Appellate Court exists yet in name and law, and there are Rules of Appellate Procedure, **no judges presently constitute the court; no plan is in place for the appointment of said judges**; and Respondents themselves, who have demonstrated a persistent intention to take Petitioners' land and restrain their liberty without adherence to any principles of federal or tribal law, the authority of the ITCSC, the Bishop Paiute Appellate Court, the General Council or the Owens Valley Board of Trustees, are exclusively in control of determining whether, when, and how to reconstitute that court.

///

- 2 -

On December 19, 2016, Respondent Kockenmeister issued an order continuing the December 20, 2016, hearing and staying the proceedings of the tribal court "pending the empanelment of the Appellate Court." Order of Continuance and Stay Pending Appeal.   The order acknowledges that the Appellate Court has yet to be empaneled.  Although the initial TPO was scheduled to expire on December 20, 2016, well beyond the 10-day period authorized for Ex Parte Orders to stay in effect by law, Respondent Kockenmeister extended its provisions, thereby continuing the deprivation of liberty and taking of Petitioner's land without due process, jurisdiction, adherence to the laws of the Bishop Paiute Tribe or Indian Civil Rights Act. Petitioners presently have no remaining remedy within the Bishop Paiute legal system and will continue to suffer irreparable harm if the relief sought in this proceeding is not granted in expedited fashion.

## II. PARTIES

1.       Petitioners Ron Napoles, Laurine Napoles, Rick Napoles, Mark Napoles, James Napoles, Debra Williams, and Wade Williams are all enrolled members of the Bishop Paiute Indian ("Bishop Tribe"), a federally recognized Indian Tribeheadquartered in Bishop, Inyo County, California.

2.       Respondents, Bishop Tribal Council, Destin Rogers, Brian Poncho, Earleen Williams and William "Bill" Vega are the elected Executive Committee of the Tribe. Respondents located within the Tribe's exterior reservation boundary, in Bishop California, Inyo County.

3.       Respondent, Bishop Tribal Court is the Tribe's court, a court of general jurisdiction.  The Court is located in Bishop, California, Inyo County.

- 3 -

PETITION FOR HABEAS CORPUS

///

4.      Respondent, Tribal Judge, Bill Kockenmeister, is the Tribal Court Judge who, at the direction of the Bishop Tribal Council, issued the Temporary Restraining Order (TRO) against Petitioners.  Judge Kockenmeister's business office is the Bishop Tribal Court, located in Bishop, Inyo County, California.

### III. JURISDICTION

5.      The District Court has jurisdiction over this action pursuant to federal law, including 25 U.S.C. § 1303, which dictates that the "privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."

6.      "A central purpose of [the Indian Civil Rights Act ("ICRA")] was to 'secur[e] for the American Indian the broad constitutional rights afforded to other Americans,' and thereby to 'protect individual Indians from arbitrary and unjust actions of tribal governments.'" *Santa Clara Pueblo v. Martinez*, 436 US 49, 61 (1978) (quoting S. Rep. No. 841, 90th Cong., 1st Sess., 5-6 (1967)).  The Bishop Paiute Tribe ***does no***t have a constitution or bill of rights, and has not adopted the provisions of the ICRA.

7.      The Court has jurisdiction because the Petitioners are being unlawfully detained, based on criminal punishment for alleged crimes including trespass, the Petitioners have exhausted all available tribal remedies, and a Tribal Court issued restraining order restricts the physical freedom (geographic movement) of the Petitioners. *See Quair v. Sisco (Quair I)*, 359 F.Supp.2d 948 (E.D.Cal. 2004); *Quair v. Sisco (Quair II)*, 2007 WL 1490571 (E.D. Cal. May 21, 2007).

///

8.      Venue is proper in the Eastern District, as all the events giving rise to this action occurred in Inyo County, California.

9.      Petitioners have not applied for this Writ in any other Court.

## IV. FACTS

### A. General Background Prior to the Events Giving Rise to this Petition

10.     Petitioners are direct descendants of Ida Warlie who received in or about July of 1941, a family assignment of 11 lots in exchange for her agreement to relocate with her family to the Bishop Paiute Reservation.  Ida Warlie Community Land and Building Assignment, July 22, 1941 (Exhibit A).

11.     Following discussions with agents of the federal government, heads of households like Ida Warlie gave up interests in land, homes and improvements in Sunland, Inyo County, California in exchange for family assignments of land located within the present boundaries of the Bishop Paiute Reservation.  See Ida Warlie Community Land and Building Assignment, July 22, 1941 (Exhibit A).  Family land was assigned according to household size, and the purpose was to provide a means of livelihood and eligibility for housing funds for the benefit of individual members of the Bishop Paiute Tribe.  1937 Act.  See also 1962 Ordinance Governing Assignments on Bishop, Big Pine and Lone Pine Reservations ("In the past, the size of assignments on the Bishop, Big Pine and Lone Pine Reservations generally were determined by the size of the assignee's family.  The assignments were granted for the purpose of providing a home and acreage to aid in supporting a family.").

- 5 -

PETITION FOR HABEAS CORPUS

///

12.     Through these land exchanges and grants of family and individual assignments, the Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony was founded and located within the present boundaries of the Bishop Paiute Reservation.

13.     The land was and is held in trust by the United States for the livelihood, welfare and benefit of the members of the Bishop Paiute community, never for the development or business purposes interests of the Bishop Paiute Tribal Council or other entity claiming governmental authority.  Indeed, the Tribal Council did not even exist at the time these original individual and family assignments were granted and consolidated into the land base that lies within the boundaries of Bishop Paiute reservation.

14.     Like other California Tribes, the Bishop Community was and continues to be governed by consensus through its General Council of all members.

15.     Despite their recent efforts to assert themselves to the contrary, under the custom, tradition and laws of the Bishop Paiute Tribe, the powers of the Tribal Council are limited and do not extend to decisions about whether to start or expand particular economic development projects, or the granting, transfer, rescission or other decision-making with respect to family and/or assigned land.

16.     Petitioner, Laurine Napoles, was listed on the original assignment for the purpose of determining its household size, as was her sister Geraldine Pasqua, who is now deceased, and four other siblings.

17.     In 1962, a land assignment ordinance was enacted by the members of the Bishop, Big Pine, and Lone Pine Reservations "in order to promote the general welfare, safeguard our

- 6 -

PETITION FOR HABEAS CORPUS

interests, conserve and develop our lands and resources." Preamble, Ordinance Governing Assignments on Bishop, Big Pine and Lone Pine Reservations (1962).

18.     That ordinance validated all existing assignments like that of Ida Warlie's. Ordinance, Article I, Section A(1). It also provided procedures for other tribal members to apply for assignments of "unassigned tribal land," to exchange or relinquish land for reassignment to another tribal member as well as for land to be passed down through the generations through designation by assignees of those they would like to receive the assignment upon death and preference rights for those who are named as beneficiaries or represented in the original assignment. 1962 Ordinance II(D)(5)(6), (9) & (10)(d).

*19.*     Well-established principles of custom and tradition extending from the inception of the Bishop Paiute Community to the present recognize family land and its orderly passing on through the generations to qualified family members, and the tribal court record in the first trespass action is replete with examples where such family land has been recognized and passed on to surviving family members throughout the Bishop Paiute community. *Bishop Paiute Tribal Council v. Bouch.*

20.     There is no lawful provision for assigned land to be converted into land for economic development or any other purpose at the hands of the Bishop Paiute Council or any other government entity. All provisions provide for and regulate the validation, exchange, relinquishment, availability and assignment of land from one tribal member to another. When land becomes unavailable to or is relinquished by one head of household or individual, it becomes available for reassignment to another family member or individual (where there are no family members eligible to receive the assignment). 1962 Ordinance.

- 7 -

PETITION FOR HABEAS CORPUS

21.     There is no provision in the 1962 ordinance or any other authority for land to escheat to the Tribal Council or other entity of the tribe.  Id.

22.     Decisions over these actions are exclusively within the authority of the Owens Valley Board of Trustees, not the Bishop Paiute Tribal Council or any entity of the Bishop Paiute Tribe.  (Id. 1962 Ordinance, Governing Body).  The OVBT was created and recognized by the Trust Agreement for Relief and Rehabilitation Grant to Unorganized Bands, approved April 17, 1939, by the Acting Commissioner of Indian Affairs.  "It was to this recognized governing body and their successors in office that the Commissioner granted and conveyed the said funds in trust, subject to specified conditions stated in the Trust Agreement.  Therefore, the recognized governing body of the Owens Valley Indian Bands is the Owens Valley Board of Trustees."  Id.

23.     Even where surviving family members are not available or do not qualify for assignment, the land does not escheat to the Tribal Council or other tribal entity.  Provides the ordinance: "In the event those individuals in the above categories do not qualify for an assignment under terms of this ordinance, the available acreage may be reassigned to any eligible member of the Owens Valley Paiute Shoshone Bands."  1962 Ordinance II(D)(10).

24.     Following the adoption of the 1962 Ordinance, Ms. Warlie's family assignment was validated by resolution of the Owens Valley Board of Trustees.  The assignment included Lots 4-11 of Block 3, including the Lots 6 and 7 that are at issue in numerous proceedings before the Bishop Tribal Court and Court of Appeals, and Lots 2-4 of Block 9, as mapped by the Bureau of Indian Affairs in 1960.  (Exhibit D).

25.     Prior to and after Ms. Warlie's death, the OVBT recognized and validated its assignment to several of her children.

- 8 -

PETITION FOR HABEAS CORPUS

26.     In or around 1969, Josephine Paradise, daughter of Ms. Warlie, was granted by resolution of the OVBT an assignment in her name of Block 3, Lot 4 and 5.

27.     On or about April 14, 1975, and in accordance with the custom and tradition regarding succession, Karen Gail Manuelito, one of Ms. Warlie's grand-daughters and the daughter of Josephine, was granted by resolution of the OVBT an assignment in her name of Block 3, Lots 4 and 5, in her name.

28.     In or around 1965, Petitioner, Laurine Napoles, daughter of Ms. Warlie and mother of Ronald, Rick and Mark Napoles and Debra Williams, was granted by resolution of the OVBT an assignment in her name of Block 9, Lots 2 and 3.

29.     Geraldine Pasqua, another of Ms. Warlie's daughters, who was also listed on the original assignment, became the head of household for Assignment 40, Block 3, Lots 6, 7, 8, 9, 10, 11, and Block 9 Lot 4.  Her interest in the family assignment was officially recognized by the Owens Valley Board of Trustees on November 15, 1977.  Resolution No. 127, November 15, 1977. (Ex D).

30.     Prior to her death in 2016, Ms. Pasqua executed an intent to relinquish interest in certain of her lots to various of the Petitioners, her great nieces and nephews and the next surviving relatives who would be eligible for said land.

31.     Pursuant to that relinquishment, Petitioner Rick Napoles applied for the transfer of Lots 10 and 11 to his name.

32.     Petitioner Debra Williams applied for Lots 8 and 9.

33.     Petitioner Ronald Napoles applied for Lots 6 and 7.

///

- 9 -

PETITION FOR HABEAS CORPUS

34.     The applications for Debra Williams and Rick Napoles were moved forward by the Assignment Committee and Bishop Paiute Council, and approved by the OVBT.

35.     The application for Ronald Napoles on Lots 6 and 7 was not advanced, as it should have under the laws and customs of the tribe.

36.     In 2006, members of the Tribal Council unilaterally and against all lawful authority decided to seize land located in Block 3, Lots 4 and 5, 6and 7 for economic development, putting into motion the circumstances ultimately necessitating the filing of this action.  Specifically, the proposal was for the expansion of the casino and parking and construction of a hotel.

37.     On or about July 3, 2007, the Bishop Tribal Council took action to cancel the assignment of Karen Gail Manuelito, and the OVBT officially cancelled it.  Resolution No. OVBT-2007-41.  July 27, 2007.  Upon cancellation, under the terms of the 1962 Ordinance the land should have become available for assignment to another family member.  Petitioners Ron Napoles, James Napoles, and Wade Williams are among those who would be eligible.

38.     On May 7, 2013, then Chairman Chad Delgado informed Petitioners and Ms. Pasqua that surveyors would be working on establishing boundaries and fencing for expanded casino parking and events.  Ex. F, Letter from Chad Delgado, May 7, 2013.

39.     Petitioners and the late Geraldine Pasqua responded on May 29, 2013 denying access to surveyors for the purpose of said activity.  ("Please be advised that access for surveying the assignments comprising Block 3 Lots 4-10 for the intent of fencing is denied.  Additionally, use in whole or part of any of the aforementioned lots for any casino/tribal related activities up to

- 10 -

PETITION FOR HABEAS CORPUS

and including additional casino parking and special event promotions is also denied.") Ex. G,

Letter from Geraldine Pasqua et al. to Bishop Paiute Council, May 29, 2014.

40.     Petitioners' correspondence also indicated that "the fact that the casino has never required additional land for any past 'events,' and the timing of this sudden need for fence 'separation,' indicates that this action may be an attempt to enforce the tribe's bogus land claim prior to a upcoming vote on casino expansion." Id.

41.     On or about July 9, 2013, and in accordance with the laws, tradition and customs of the Bishop Paiute Tribe, the matter of the building of a hotel and casino expansion that Respondent Tribal Council is now pushing to build on Block 3 Lots 4 and 5, 6 and 7 was put to a referendum vote of the General Council, the governing entity bestowed with authority for such decisions. The majority voted against the proposal. Sample Ballot and Vote. (Exhibit H.)

42.     No other votes of the General Council have taken place since then regarding the casino and hotel expansion or other activity on the land in question.

43.     Until these efforts of recent contingents of the Bishop Paiute Tribal Council to build the hotel and casino expansion upon their land began and Petitioners were forced off or fenced out of their land, Ida Warlie, her children, grandchildren and great grandchildren have continuously occupied the family land described above since it was originally granted to them in 1941.

44.     Petitioners have had at all times possessed under well-established principles of the law applicable within the boundaries of the Bishop Paiute Tribe the lawful right to use and occupy the land in question.   They are the rightful occupants of Lots 4 and 5, and 6 and 7, just as they are on the remaining lots of Ida Warlie's family assignment that are not at issue in this case,

- 11 -

PETITION FOR HABEAS CORPUS

as direct descendants to Ida Warlie with interest in a family assignment existing since the inception of the creation of the Bishop Paiute Reservation, passing properly through the generations based on the terms of the 1962 Ordinance, the decisions of the Owens Valley Board of Trustees, and tribal law and custom.

45.     By no law or custom applicable within the Bishop Paiute Tribe, does Respondent Tribal Council have proper authority to exercise dominion over Block 3, Lots 4 and 5, Lots 6 and 7, or any other family or assigned land issued for the welfare, homes, and sustenance of tribal members.  Like other federally recognized tribes in California, the Tribal Council has limited administrative functions.  The entity did not exist at the time the original family assignment was granted to Ms. Warlie or in close proximity to the formation of the Bishop Paiute Community.  Exclusive governance authority over these matters lies with the General Council, that has the primary governance authority over matters internal to the Bishop Paiute Community, and the Owens Valley Board of Trustees that has exclusive authority over land assignments existing within the Bishop, Big Pine and Lone Pine Paiute bands.

46.     The land in question, in particular Block 3 Lots 6 and 7, and Petitioner's right to their use and occupancy rights of said land was the subject of earlier trespass citations that resulted in decisions of this court in *Bishop Paiute Tribal Council v. Bouch et al.*, B-AP-1412-6-12.

47.     In that case, there was an extensive factual presentation and record established in the tribal court on the issue of who had use and occupancy rights to the land in question and whether the Tribal Council had authority, thereby, to trespass Petitioners and other family members and guests from this land.

- 12 -

PETITION FOR HABEAS CORPUS

48.     Petitioners Ron, Rick, Debraand Laurine Napoles were parties in that earlier action.  Petitioners Mark and James Napoles and Wade Williams are brothers and nephews of Ron and Rick, descendants also of Ida Warlie, possessing their own interest in being upon the land in question and invited by other authorized members of the Ida Warlie/Pasqua/Napoles/Williams family to be upon it too.

49.     In that action, Respondent Kockenmeister issued a decision on June 19, 2014 affirming citations for Trespass against several Petitioners and other friends and family members for their presence and activities on their family land.  (See Ex. I, Findings of Fact, Conclusions of Law and Judgment, June 19, 2014).

50.     From the inception of the first trespass action against Petitioners, Respondent Kockenmeister has demonstrated a significant confusion of roles and inability to act as an impartial and independent judicial officer.  In the first decision on the matter, he took the position the tribal court lacked jurisdiction to adjudicate land disputes but nonetheless affirmed the citations for trespass in deference to what the Bishop Paiute Tribal Council had asked him to do. *Bishop Paiute Tribal Council v. Bouch et al*., Findings of Fact, Conclusions of Law and Judgment at 2-3.  In the hearing, he explained to Petitioners and their family, "Once again I cannot, if the Tribal Council tells me it's their land, there's nothing I can do about that.  Let me say that, and I'm not disagreeing with you, I'm telling you I have no authority to make that determination. . . . And I have to accept the Tribal Council's position that it's their land at this point in time. . . [I]f the Tribal Council comes and tells me this is our land I can't say no it's not, I don't have that kind of authority."  Transcript, at 4-5, Bishop Paiute Tribal Court, June 17,

- 13 -

PETITION FOR HABEAS CORPUS

2014.  He conducted no reasonable fact-finding about the elements of trespass, applied no valid legal principle or authority, but nonetheless issued the relief requested by Tribal Council.  In that regard, he acted more as an advocate for and enforcer of the Tribal Council, not an impartial judicial tribunal.

51.    The Bishop Paiute Court of Appeals, reversed said decision, in *Bishop Paiute Tribal Council v. Bouch*, B-AP-1412-6-12, remanding the matter to the lower court for the purpose of receiving further evidence and argument and issuing findings of fact and conclusions of law about the core issue:  namely, use and occupancy rights to the land in question. (See Ex.__, Decision BP Appellate Court).

52.    Instead of exercising its option to do that, however, Respondent Tribal Council moved to dismiss its claims against Petitioners and their family and guests.

53.    Petitioners opposed said motion and argued, in the event the court granted dismissal, that such dismissal should be without prejudice, given the stage of the proceedings and the extensive factual and legal argument that had occurred in the case.

54.    Respondent Kockenmeister has persisted in advocating on the side of Bishop Tribal Council and attempting to circumvent the appellate court's decision and authority regarding the need to determine the status of the land prior to taking action against Petitioners. Additionally, he has consistently rejected the authority and determinations of the Owens Valley Board of Trustees, the decisions and authority of the General Council, and the clearly articulated and longstanding laws of the Bishop Paiute Tribe in order to effectuate the unlawful aims of representatives of the Bishop Paiute Tribal Council with respect to the proposed development.

PETITION FOR HABEAS CORPUS

55.     In a Pretrial Hearing held on October 18, 2016, purportedly for the purpose of discussing the next steps in scheduling an evidentiary hearing following remand from the court of appeals, Respondent Kockenmeister indicated **he would not be resolving the land issue as directed by the appellate court** as it was "beyond my comprehension of anything that an appellate court has ever done in my 35 years as an attorney." October 18 Hearing Record. ("I don't care, I don't care. Hold on. I don't care what the appellate court said quite frankly. Okay they had what appeared to me almost an evidentiary hearing in the appellate court.  It was an outrageous action on their part and at this point in time I'm prepared to dismiss the citation with prejudice. If that's what you want to do Miss Kimber you are the counsel for the tribe who brought the citations.")

56.     Upon Ms. Kimber's confirmation that she did indeed wish to dismiss the citations, Respondent Kockenmeister indicated that he would be dismissing them with prejudice "which means that for the particular incident in question it cannot come before the court if there's another trespass issue then we'll just go from there. Thank you very much." Id.

57.     On October 28, 2016, the tribal court dismissed the matter WITH PREJUDICE, thereby precluding the parties from relitigating the matter of trespass from the land in question. Order of Dismissal, *Bishop Paiute Tribal Council v. Bouch* et al., October 28, 2016 (Exhibit J). The written entry of that decision states: "By requesting dismissal Plaintiff has indicated that it does not seek any relief from the court and the matter is moot. . . .  Dismissal of this matter is therefore appropriate.   For these reasons, IT IS HEREBY ORDERED that this matter is Dismissed With Prejudice." Order of Dismissal, October 28, 2016.  Respondent Tribal Council did not appeal the court's decision to dismiss with prejudice."

- 15 -

PETITION FOR HABEAS CORPUS

58.     Petitioners, having prevailed in the previous suit on the matter, resumed use and occupancy of the land in question, restoring livestock and fencing and moving a trailer that had been stored elsewhere on their family land upon the land in question.

59.     In September 2016, Respondents published notice of a comment period on an Environmental Assessment describing the casino and hotel expansion development planned for Block 3, Lots 4 and 5, 6 and 7.  Ex. K, Bishop Paiute Casino Project Tribal Environmental Assessment, September 2016, http://www.bpdcorp.org/images/PublicReviewDraftTribal-EA_Casino.pdf

60.     That Environmental Assessment indicates that the plans were underway to break ground in March of 2017. ("2.3 CONSTRUCTION SCENARIO Construction of the proposed project is expected to begin in March 2017. Construction would involve typical activities including site preparation, excavation and grading for the expansion area, foundation building, framing, electrical and mechanical work, finishing and paving.  Infrastructure upgrades would occur simultaneously with building construction and it would take approximately 22 months to complete the construction of the expanded facilities and the modernization of the Casino."E.A. at 4).

61.     On or about November 15, 2016, notwithstanding their decision to dismiss the case with prejudice rather than establish their lawful authority to eject the Petitioners from the land in question, Respondents Bishop Tribal Council and Deston Rogers issued a press release. Press Release, November 15, 2016 (Exhibit L).  Not only does the release contain multiple personal and defamatory attacks on Petitioner Ronald Napoles, but it erroneously construes the meaning of dismissal with prejudice.  States the release: "The most recent dismissal by the

- 16 -

PETITION FOR HABEAS CORPUS

Bishop Paiute Tribal Court of the 2014 trespass claims against Mr. Napoles and his family was done at the request of Tribal Council.  The fact that the claims were dismissed with prejudice does not limit the Tribal Council's authority to bring trespass charges against Mr. Napoles in the future if he chooses to once again violate the Tribe's laws." Id. at 2.  This is a false characterization of the law that grossly misleads the community about the legal status of Petitioners' assignment and the previous trespass action and circumvents the authority and decisions of the General Council and Owens Valley Board of Trustees.

62.     Petitioner Ronald Napoles and other of the Petitioners have at all times taken pains to utilize the legal processes and laws of the Bishop Paiute Tribe.

63.     The Respondents, not Petitioners, on the other hand, have refused to honor the laws applicable within the Bishop Paiute reservation and misconstrued and misused the judicial process to achieve their aims.

64.     On or about November 19, 2016, Respondent Deston Rogers accompanied by officers of the Bishop Paiute Tribal Police and the Inyo County Sheriff's office entered Petitioner's land without authority and issued trespass and nuisance citations once again against Petitioners Ron, Rick, Mark and James Napoles and Wade Williams, who were the ones present and working on the property at that time. See, e.g., citations to Ron and Rick Napoles, case numbers 1280 and 1284, November 19, 2016, (Exhibit M).  They approached Petitioners on more than one occasion on that day.  At the time they were apprehended, Petitioners were working on Lots 6 and 7.  Respondents crossed Lots 4 and 5 to get to them.

65.     When asked to leave by Petitioners, Respondent Rogers replied that he would stay there as long and whenever he wanted and that Petitioners did not have the authority to tell the

- 17 -

PETITION FOR HABEAS CORPUS

Tribal Council when to leave.  Respondent Rogers threatened to issue citations every day until they left the property and told them they would be tearing out Petitioners' fencing, livestock and property.

66.     Tribal Police returned on November 20 and 21, 2016, and issued the same citations, each commanding Petitioners to appear to court on December 20, 2016.  See, e.g., citations 1282, 1284, 1285, 1286, 1289, 1290 issued to James and Rick Napoles, (Exhibit N).

67.     There was not then, nor has there ever been, any breach of the peace by Petitioners or their guests or invitees.

68.     Petitioners' personal liberty and security as well as right to quiet enjoyment of their land, however, was breached by Respondents Rogers and Bishop Tribal Council and accompanying law enforcement officers, who entered upon the land in question on multiple occasions and confronted the Petitioners, using the threat of criminal charges and the force of law enforcement from two jurisdictions to intimidate Petitioners and attempt to remove them from their land.

69.     On or about November 21, 2016, Respondents Tribal Council and Rogers caused to be served on Petitioner Ron and Rick Napoles a directive to remove their property within 24 hours.  See, e.g., Notice to Appear and Complaint (sic) ("24 hours to remove fence and other property.  Hearing by 11/23/16") (Exhibit O).

70.     Also on or about November 21,2016, in the evening, Respondents Tribal Council and Rogers caused an officer of the Bishop Paiute Police to serve upon Petitioners Ron and Mark Napoles at their homes a notice that there would be a proceeding in court the following day, November 22, 2016 at 2:30 p.m.

- 18 -

PETITION FOR HABEAS CORPUS

71.     The time and manner of service violated the Petitioners' personal security. The officer pounded on the doors indicated gruffly that the proceeding would go on the next day whether or not everyone was notified.

72.     The notice did not include reference to any legal authority or remedy, nor did it state the reason for the proceeding.  It simply directed Petitioners to bring whatever evidence or witnesses they wished to present at this mysterious event. See Notice of Hearing.  November 21, 2016 (Exhibit P).

73.     Respondents caused Petitioners James Napoles and Wade Williams to be served at work the following day, November 22, causing embarrassment and intimidation and perpetuating a hostile environment with respect to their employment.

74.     Respondent Rick Napoles was never served with said notice.

75.     On or about December 5, 2016, Petitioners Mark Napoles, James Napoles and Wade Williams, who were employed by the Bishop Paiute Tribe, each in different departments, were suspended without pay and subjected to certain conditions of a Performance Improvement Plan in direct retaliation for their involvement in the proceedings involving their family land.  On December 20, 2016,  James Williams was terminated from his employment.

76.     On November 22, 2016, despite the absence of any filed petition or other documents, Respondent Kockenmeister convened a proceeding in the tribal court.

77.     Respondent Kockenmeister indicated that notice had been provided simply as "a courtesy" to Petitioners, as he was issuing an ex parte temporary restraining order. He prohibited Petitioners from presenting any evidence, which would have been necessary to determine that a trespass had occurred and that such trespass had created an emergency risk to health or safety,

- 19 -

PETITION FOR HABEAS CORPUS

the requirements under the Bishop Paiute Trespass Ordinance necessary for issuing a valid temporary restraining order. Recording, November 22, 2016, Proceeding. Specifically, he explained: "With respect to the restraining order it can be made ex parte, meaning that you don't get to receive notice of the restraining order until after it is issued. So, you don't have any due process rights. You don't have any rights to actually say anything what we have here today is a courtesy to you." Id.

78.     During that proceeding, Responding Kockenmeister also indicated his ongoing disregard for the previous order and mandate of the appellate court from the earlier proceeding, reiterated his position that he would never determine the status of the underlying land as directed by the court no matter what the appellate court had directed, and reverted generally to the position he used as the basis for his June 13, 2014 decision that was reversed by the court of appeals. Id.

79.     On November 23, 2016, Petitioners were served with a written version of that Temporary Restraining Order that is attached in its entirety to this Petition.   Temporary Protection Order, *Bishop Paiute Tribe v. Napoles et al*. Case Number BT-CV-RO-2016-0062 et seq. November 22, 2016 (Exhibit Q).

80.     That TPO falsely includes reference to the federal Violence Against Women's Act and threatens federal criminal penalties should Petitioners violate it. Id..

81.     It falsely states that Petitioners have sought protection "against any acts of violence, threats, harassment and/or causing emotional distress" and erroneously concludes "it appearing to the satisfaction of the Court from specific facts shown by a verified application that an act of violence, threats, harassment and/or causing emotional distress has occurred or there

- 20 -

PETITION FOR HABEAS CORPUS

exists a threat of violence, threats, harassment and/or causing emotional distress and good cause appearing for issuing such Order without hearing." Id at 2.

82.    It includes the following warning: "WARNING: Possession of a firearm or ammunition while this Order is in effect may constitute a felony under federal law punishable by fines and/or a prison sentence." Id.  Not only is such language wholly unwarranted in light of the circumstances of the instant matter, but it infringes upon traditions and livelihoods regarding the hunting of rabbits and other wildgame that exist within the Bishop Paiute community and that certain of Petitioners adhere to during this time of year.

83.    It advises law enforcement outside the tribe to give full faith and credit to the order, as they would only have authority to do under the Violence Against Women Act.  After all that, it types in on the box designated on the form order for determining whether the perpetrator of domestic violence may enter or occupy a family home, that Petitioners:  "YOU MAY NOT ENTER AND OCCUPY Bishop Paiute Tribal Lands - Block 3, Lots 6 & 7."  The facts underlying this action have nothing to do with domestic violence and Respondents' associating Petitioners with domestic violence works a serious harm on their reputations and livelihoods within the communities and work environments, and puts them at high risk for arrest or harm from law enforcement who may be misled about the true nature and enforceability of this order. Furthermore, there is no dwelling or structure to enter upon on the lots in question, as the Order suggests.  The land in question is pastureland that exists for Petitioners' livelihood as part of their total family assignment.  The use of an order derived from the context of domestic violence creates a severe distortion of the circumstances, placing Petitioners' security and livelihood at risk within and outside of the community.

- 21 -

PETITION FOR HABEAS CORPUS

84.     Not only was this order issued without the filing of a petition or affidavit or any establishment of a legal or factual basis for its issuance, it creates a serious and imminent threat to Petitioners' liberty, inviting law enforcement agencies outside the Bishop Paiute Tribe to arrest or charge Petitioners with major crimes, even federal ones.

85.     On November 11 and December 6, 2016, the court issued Notices of Hearing to Petitioners in case numbers BT-CV-RO-2016-0062, BT-CC-NS-2016-0051 et seq. and BT-CC-TP-2016-0068 et seq. announcing a hearing set for December 20, 2016 at 11:00 a.m. but including no petition or details regarding that event. (Exhibit R.)

86.     In response to the threats contained in the TPO and persistent acts of intimidation and harassment by Respondents and law enforcement they directed to enforce their power, Petitioners removed their livestock, fencing and property and have stayed off the land.

87.     On December 13, 2016, Petitioners Ron, Rick, Mark and James Napoles and Wade Williams filed a Petition for Writ of Mandamus in the Bishop Paiute Appellate Court, contesting the actions of all respondents and seeking the same relief requested in the instant Petition, serving it upon all parties.

88.     On December 12, 2016 when seeking to file the Petition with the ITCSC, which had been retained and constituted in the previous action to serve as the Bishop Paiute Court of Appeals, Petitioners learned that Respondents had cancelled their contract with that appellate entity following the decision against them rendered in the court in the first proceeding, *Bishop Paiute Tribal Council v. Bouch et al.*

89.     Upon filing the Petition the following day, the clerk of the Bishop Paiute Tribal Courts, Joyce Alvey, confirmed that the contract had indeed been cancelled and that there were

- 22 -

PETITION FOR HABEAS CORPUS

presently no judges to proceed in appellate proceedings.  She indicated that she would be

forwarding the Petition to Respondent Kockenmeister for him to determine how to proceed.

90.     On December 15, 2016 Petitioners moved Respondent Kockenmeister to

disqualify himself and moved to continue and stay the December 20, 2016 hearing and all further

proceedings in the matter until such time as the court could be reconstituted and rulings made on

the Petition for Writ of Mandamus.  Petitioners also moved for the disqualification of

Respondent Kockenmeister.  Since the terms of the original TPO were set to expire on

December 20 and no additional pleadings or documentation had been submitted by Respondents

in the interim seeking its extension or a basis for it, Petitioners anticipated that the TPO would be

terminated should the court continue and stay the proceedings.

91.     On or about December 16, 2016, pursuant to the direction of Respondents, an

impermeable chain link fence was placed contiguously around the perimeter of Block 3, Lots 4

and 5; and Block 3, Lots 6 and 7, excluding Petitioners from these pieces of family land.

92.     On December 19, 2016, Respondent Kockenmeister issued an ordercontinuing the

December 20 hearing and staying the proceedings "pending the empanelment of the Appellate

Court."  Order of Continuance and Stay Pending Appeal.

93.     The order acknowledges that the Appellate Court has yet to be empaneled.

Although the initial TPO was scheduled on its face to expire on December 20, well beyond the

10-day period authorized for Ex Parte Orders to stay in effect by law, Respondent

Kockenmeister summarily and sua sponte extended its provisions, thereby continuing the

deprivation of liberty and taking of Petitioner's land without due process, jurisdiction, adherence

to the laws of the Bishop Paiute Tribe or Indian Civil Rights Act.

- 23 -

PETITION FOR HABEAS CORPUS

94.     Significantly, the order staying the proceedings sets a review hearing for March 21, 2017, and March 2017 is the date the Environmental Impact Statement announced that Tribal Council would begin construction on Petitioners' land.  Environmental Assessment, September 2016.

95.     Thus, no timely relief is available to Petitioners within the Bishop Paiute court system.  Moreover, their unlawful detention, effectuated by Respondents without due process and against the decisions of the ITCSC and both tribal and federal law, remains in effect unless and until such time as the Respondents decide whether, when, and who to empanel for the appellate court.  Given the Respondents' persistent and serious disregard for the laws and process of the Bishop Paiute Tribe and the Indian Civil Rights Act, including their decision to terminate the contract with the ITCSC without designation of an alternative, it is unlikely an alternative forum will be constituted prior to Respondents' advancing the development project to the construction phase.

96.     The actions of Respondents work a severe and wholly unjustified restraint on Petitioners' liberty and personal security.

97.     The actions of Respondents infringe upon Petitioners' rights to due process guaranteed under ICRA and the laws of the Bishop Paiute Tribe, including those governing ex parte and temporary restraining orders and trespass.

98.     The actions of Respondents effectuate an unlawful a taking of land with respect to which Petitioners enjoy the right to exclusive use and occupancy rights in violation of ICRA and the law of the Bishop Paiute Tribe.

- 24 -

PETITION FOR HABEAS CORPUS

99.     The actions of Respondents violate the valid and lawful determination by referendum of the General Council of the Bishop Paiute tribe opposing the development proposed by Respondents Tribal Council.

100.     The actions of Respondent violate the right to equal protection and freedom of expression guaranteed under ICRA.

101.     The actions of Respondent have caused extreme emotional distress, defame and injure Petitioners and other descendants of Ida Warlie, undermine the sovereignty and effective governance of the Bishop Paiute Tribe, and create an intolerable and extreme state of lawlessness and instability within the community.

**B.  The Respondents Have Unlawfully Detained the Petitioners**

102.     Petitioners reference and incorporate the preceding paragraphs 1 through 101.

103.     Through their actions over the past years and in a steadfast effort to take Petitioner's land for development purposes that were rejected by the General Council, Respondents have individually and collectively used force, intimidation, harassment, citations; and they have abused legal process to force Petitioners off their land, impeding their liberty and security and detaining Petitioners.

104.     These efforts have continued and, indeed, intensified, despite a decision by the Court of Appeals reversing the lower court's June 17, 2014 trespass convictions, and the lower court's dismissal of the matter with prejudice on remand.

105.     Tribal police and Inyo County Sheriffs accompanied Respondent Deston Rogers onto the land on November 19 and Tribal Police returned on November 20, and 21, surrounding Respondents while Respondent Rogers ordered them to remove their property and threatened

- 25 -

PETITION FOR HABEAS CORPUS

them with further citations.  All officers were armed, and at least one held his hand on his gun during the interaction.

106.    Tribal officers further invaded Petitioners personal security in their homes and work places, serving additional notices on November 21 and 22.

107.    The TPO, issued by Respondent Kockenmeister on November 22 "ex parte" and without the filing of a petition, affidavit invoking the court's jurisdiction, or any factual evidence and entered against Respondents, without a vestige of due process,prohibits them from entering or moving upon their land and creates a condition of imminent arrest and deprivation of liberty, potentially even by law enforcement located in jurisdictions outside the tribe, should they choose or be misled into enforcing the terms of the Order.

108.    Although the original ex parte order was scheduled to expire on December 20, 2016, Respondent Kockenmeister extended it sua sponte and indefinitely in the December 19, 2016 order continuing and staying the proceedings.

///

109.    These conditions, wholly unwarranted by law and without any of the legal steps required by Bishop Paiute Law and federal due process, create an actual and imminent threat of deprivation of liberty for Petitioners.

### C. The Trespass Penalty is a Criminal Sanction Lacking Due Process and Meaningful Administrative Remedies

110.    Petitioners reference and incorporates paragraphs 1 – 109 of this Complaint.

PETITION FOR HABEAS CORPUS

111.    The BTC has criminalized trespass and nuisance through the implementation of two ordinances.  Bishop Paiute Trespass Ordinance, No. 2000-02; Bishop Paiute Nuisance Ordinance, No. 2000-03.See Ex. S.

112.    These ordinances authorize citations to be filed by persons authorized by Bishop Paiute Tribal Council, as de facto prosecutors, and carry sanctions in the form of fines and other restrictions on the movement and liberty of those charged and convicted by the court.

113.    Despite the fact that the ordinances have legal elements that must be established, including that the Respondents unlawfully trespassed on land that did not belong to them or with respect to which they did not enjoy use and occupancy rights, Respondent Kockenmeister has convicted them of trespass and issued a TPO simply because the Tribal Council demanded it, refusing to determine the status of the underlying land even though that was deemed essential by the court of appeals.

114.    This has had the effect of criminalizing Petitioners without the benefit of notice, a hearing to present and refute any legal or factual basis for the citations and TPO, an impartial tribunal, or other requirements of due process.

///

- 27 -

PETITION FOR HABEAS CORPUS

## VI.   CAUSES OF ACTION

### A. First Cause of Action: Unlawful Restraint on Personal Liberty in Violation of ICRA Due Process

115.    Petitioners hereby incorporate and re-allege the foregoing Paragraphs.

116.    ICRA provides the "privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."

117.    ICRA provides that "[n]o Indian tribe exercising the powers of self-government shall . . . deprive any person of liberty or property without due process of law." 25 U.S.C. § 1302(8).

118.    Respondents have denied petitioners due process of law.

119.    Prior to the most recent round of restrictions, the issuance of the TRO, the fencing around their land, the threats of federal criminal sanctions, the warning not to possess firearms and other physical restrictions and threats imposed by Respondents, Petitioners received no meaningful notice. No petition or affidavit invoking the jurisdiction of the court was even filed with the court as required under tribal law prior to issuance of an ex parte or temporary restraining order.

120.    No hearing meeting the requirements of due process was held. At the November 22, 2016, proceeding scheduled sua sponte by Respondent Kockenmeister, no witnesses were sworn or took the stand; no documents, submitted, and Respondents have offered no legal or factual justification for their detention and restraint of Petitioners.

///

///

- 28 -

PETITION FOR HABEAS CORPUS

121.     Petitioners, moreover, were informed by Respondent Kockenmeister that notice had been provided simply as "a courtesy" to Petitioners and that they were not allowed to present evidence or make any arguments as he was issuing an ex parte temporary restraining order.

122.     Although Respondents Tribal Council and Rogers were represented in that proceeding, the timing of the notice did not afford Petitioners the opportunity to obtain legal representation for that proceeding.

123.     Petitioners' right to due process before an impartial tribunal has also been violated.  Respondent Kockenmeister has demonstrated a persistent and acute inability to execute his responsibilities as a judicial officer of the tribe, independent from the will of the Bishop Tribal Council.  He has denigrated and refused to follow the decisions and authority of the appellate court and manipulated the judicial process in a way that circumvented the directive of the court of appeals to determine the status of the land before ejecting Petitioners and their family from it, thereby effectuating the development goals of certain members of the Bishop Tribal Council.

124.     In the November 22, 2016, event scheduled by the court for the purpose of announcing its intention to issue an ex parte temporary restraining order, Respondent Kockenmeister reiterated that "[t]he appellate case is of no import in this court in this proceeding today" and returned to the position that he articulated before his decision in that case had been reversed, explaining to Petitioners, that "I am not hearing the issue of whether or not you are the owner of the land.  This tribe does not have the jurisdiction to hear, the tribal court does not have jurisdiction to hear land disputes. You will not put on your case with respect to that in this court. Ok, that's the first thing." November 22 Recording of Proceedings. He thereby prohibited the

- 29 -

PETITION FOR HABEAS CORPUS

presentation of any evidence, which would be necessary under fundamental principles of due process and to determine, as required by tribal law, that a trespass had occurred and emergency grounds existed for the purposes of a temporary restraining order.

125.   The fact that he ordered a temporary protection order within weeks of dismissing the previous trespass action with prejudice, without requiring or allowing the submission of evidence or the filing of a petition required by law, further calls into question his handling of the case and ability to be an impartial judge on the matter.

126.   His December 19, 2016, sua sponte and ex parte extension of the TPO in his granting of a continuance and motion to stay the proceedings further reinforces Respondents' goal of detaining Petitioners and restricting them from their land without a modicum of due process.

127.   Clearly, Respondent Kockenmeister's interest in furthering the goals of the Bishop Paiute Tribal Council and hostility for the order of the appellate court reversing his earlier judgment have resulted in extreme bias and prejudice against the Petitioners, thereby denying them their right to a fair and impartial tribunal guaranteed by principals of due process and encroaching upon their freedom, security, and right to peaceful use and occupancy of their family land and homes.

128.   Criminal Trespass, in the manner requested by the Council and as ordered by the Tribal Court in its June 2014 decision and the most recent TPO, constitutes restraint for purposes of ICRA habeas "detention."

129.   The unique trespass results in detention because the petitioners' movement is prohibited under criminal sanction and the issuance of a TPO that prevents them from entering

upon their land, deprives them of certain rights, and puts them at risk of arrest by law enforcement in surrounding jurisdictions who may be misled by the terms and findings of the order.

130.    The Tribe's Appellate Court remanded the case back to the Tribal Court, but the Tribal Court ignored the Appellate Court's request for Judge Kockenmeister to decide the trespass issue.  Instead, Judge Kockenmeister ignored the appellate court and dismissed the case, *sua sponte*, in the absence of any due process to Petitioners.

131.    As applied, Petitioners have received no opportunity to be heard and because the Tribe has canceled the ITCSC contract without establishing or identifying another court of appeals, the Tribe is without an Appellate Division for which Petitioners can seek redress.

132.    Although a court system purporting to have independence and certain laws, i.e., of trespass, nuisance, the orderly transmission of family and individual assignments, and the issuance of ex parte and temporary injunctive relief, have been developed within the Bishop Paiute Tribe, Respondents have persistently refused to follow those laws.

133.    Respondent Kockenmeister, through his actions and decisions related to the matter in question, has acted more as an advocate for and enforcer of the will of Tribal Council than impartial judicial officer and has compromised the independence, impartiality and integrity of the Bishop Paiute Tribal Court to such a degree that no measure of due process has or may be afforded to Petitioners.

134.    This undermines the integrity of the independence and credibility of the tribal court system as well as the sovereign authority of the Bishop Paiute Tribe as a whole.

135.    The Order clearly affects the geographic movement of the Petitioners.

- 31 -

PETITION FOR HABEAS CORPUS

136.    There is no Tribal Court forum or other means to contest the criminal charges or to protest the Order. No hearings have or will be granted to the Petitioners.

137.    Respondents' treatment of Petitioners is a criminal punishment and violates Petitioners' right to be free from arbitrary restraints on liberty as guaranteed by ICRA and the Tribe's Constitution.

### B.  Second Cause of Action: Unlawful Restraint on Personal Liberty in Violation of Federal ICRA Equal Protection

138.    Petitioners hereby incorporate and re-allege the foregoing Paragraphs.

139.    ICRA provides that "[n]o Indian tribe exercising the powers of self-government shall . . . deny any person within its jurisdiction the equal protection of its laws . . . ." 25 U.S.C. § 1302(8).

140.    Respondents have discriminatorily applied purported Tribal laws against Petitioners and therefore denied Petitioners equal protection.

141.    Even where others unconnected to the Warlie family were present on the land in question, they were not cited or otherwise warned, restricted or subjected to legal action or deprivation of liberty.

142.    The Executive Committee specifically targeted a class of persons, descendants of Ida Warlie, a female head of household and all Tribal members who claim an interest in the disputed Assignments.

143.    There is no compelling interest that would justify treating the Petitioners differently from the other Tribal members.

///

PETITION FOR HABEAS CORPUS

### C.  Third Cause of Action:  Unlawful taking of land in violation of ICRA

144.    The actions of Respondents are, at root, an effort to seize Respondents' family land for the purpose of their proposed development action, development that has been rejected on more than one occasion by the authority of the General Council, who has the proper authority over such decision-making.

145.    There is no provision under the law of the Bishop Tribe for taking assigned land.

146.    Other than action by the OVBT within the constraints of the 1962 Ordinance, neither the BTC nor any other tribal entity has authority to take action with respect to any assigned land; and no entity, not even the OVBT, has authority to convert assigned land to commercial or use other than to recommend reassignment of the land to another eligible tribal member.

147.    Respondents have neither compensated Petitioners, nor developed or instituted a takings process, of the kind and nature that would be necessary under ICRA.

148.    Rather, Respondents have attempted to take Petitioners; land has been taken through force, intimidation, physical sequestration, and abusive and unlawful use of legal process.

149.    These actions create a dangerous precedent for all members of the Bishop Paiute Tribe.

150.    They also constitute an invalid taking of Petitioners' family land in violation of the Indian Civil Rights Act, 25 U.S.C. Section 1302 (2) and (8).

///

///

///

- 33 -

**D. Fourth Cause of Action:  Deprivation of Rights to assembly and speech**

151.    Petitioners reference and incorporate paragraphs 1 – 150.

152.    The Indian Civil Rights Act prohibits tribes from making or enforcing "any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances."  25 U.S.C. Section 1302(1).

153.    Petitioners have been outspoken opponents of the Tribal Council's efforts to grab land and the casino expansion/hotel development.  They have placed signs to that effect on the land in question, mounted a significant public relations campaign, and communicated their concerns with the B.I.A. and other external agencies as well as members of the BTC and General Council.

154.    In the first trespass action in the tribal court, when the issue of the signs came up and Respondents argued the issue of their freedom of expression, Respondent Kockenmeister directed them to remove the signs from the land in addition to trespassing them.

155.    The actions of Respondents, by restricting Respondents from where they can go on their family land and citing and intimidating their guests and invitees as well further impeded their right to freedom of assembly.

///

- 34 -

PETITION FOR HABEAS CORPUS

## V. RELIEF

**WHEREFORE**, Petitioners pray that the Court:

A.      Issue the Writ of Habeas Corpus or an order to show cause why a Writ of Habeas Corpus should not be entered.

B.      Declare that Respondents' Temporary Restraining Order imposes a criminal punishment for which a Writ of Habeas Corpus is available.

C.      Declare that Respondents' Temporary Restraining Order is sufficiently severe potential or actual restraint on liberty to warrant habeas review.

D.      Declare that Respondents have violated and are violating ICRA.

E.      Order Respondents to discharge Petitioners from the restraints on Petitioners' personal liberty.

F.      Issue an Order vacating Petitioners' trespass and nuisance sanction.

G.      Issue an Order enjoying Respondents' from issuing legal process or further interfering with Petitioners' Use and Occupancy rights of all family land, including but not limited to Block 3, Lots 4 and 5; Block 3, Lots 6 and 7, and all other land that was part of the original assignment of Ida Warlie.

H.      Granting immediate emergency relief and thereafter preliminary injunctive relief prohibiting Respondents from taking any further action on the land in question and against petitioners.

I.      Award Petitioners reasonable attorneys' fees and costs.

J.      Grant Petitioners such other and further relief as the Court deems just and proper.

- 35 -

PETITION FOR HABEAS CORPUS

Petitioners reserve the right to amend this Complaint to plead new parties, claims and/or allegations.

**EXHIBITS** - Appendix A attached hereto.

Respectfully Submitted this December 27, 2016

DURAN LAW OFFICE

By: ___*/s/ Jack Duran*___

JACK DURAN
*Attorneys for Petitioners*

- 36 -

PETITION FOR HABEAS CORPUS