UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD NAPOLES, LAURINE NAPOLES, RICK NAPOLES, JAMES NAPOLES, MARK NAPOLES, DEBRA WILLIAMS, and WADE WILLIAMS,<br><br>Petitioners,<br><br>v.<br><br>DESTIN ROGERS, BRIAN PONCHO, EARLEEN WILLIAMS, BISHOP PAIUTE TRIBAL COURT, BILL KOCKENMEISTER, and WILLIAM "BILL" VEGA,<br><br>Respondents. | No. 1:16-cv-01933-DAD-JLT<br><br>ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION FOR EMERGENCY INJUNCTIVE RELIEF AND TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 6) |

Petitioners Ronald Napoles, Laurine Napoles, Rick Napoles, James Napoles, Mark Napoles, Debra Williams, and Wade Williams proceed under a petition for writ of habeas corpus pursuant to 25 U.S.C. § 1303. Before the court is petitioners' ex parte application for a temporary restraining order and order to show cause why a preliminary injunction should not issue. For the reasons set forth below, the ex parte application will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the allegations of the petition and in the instant application, petitioners are descendants of Ida Warlie and heirs to her family assignment of land located within the present

1

boundaries of the Bishop Paiute Tribe's federal reservation.  (*See* Doc. No. 1 ¶ 10.)  In 1962, tribal members enacted the Ordinance Governing Assignments of Bishop, Big Pine and Lone Pine Reservations ("1962 Ordinance"), which validated then-existing assignments like that of Ms. Warlie.  (*Id.* ¶¶ 17–18.)  Since the adoption of the 1962 Ordinance and after Ms. Warlie's death, petitioners applied for, and in several instances were granted, applications for assignments to portions of this land.  (*See id.* ¶¶ 24–35.)  Beginning in 2006, however, the Bishop Paiute Tribal Council decided to cancel certain assignments and to seize certain lands subject to petitioners' assignments for the proposed expansion of a casino on the reservation.  (*Id.* ¶¶ 36–37.)  In this action, petitioners dispute whether the Tribal Council had the proper authority to do so.

In 2013, the Tribal Council took steps toward expansion of the casino, but petitioners, believing they were the rightful occupants of the disputed land, continued to use and occupy certain lots of land.  (*See id.* ¶¶ 38–45.)  The Tribal Council issued trespass citations, and in proceedings before the Bishop Paiute Tribal Court, respondent Judge Bill Kockenmeister concluded that the court did not have jurisdiction to adjudicate land disputes and affirmed the citations for trespass.  (*Id.* ¶¶ 47–49, Ex. I.)  On appeal, the court of appeals reversed and remanded the matter for further determination regarding petitioners' legal rights to occupy the land.  (*Id.* ¶ 51.)  Before such a determination could be made by the Tribal Court, the Tribal Council voluntarily dismissed its trespass claims, and petitioners resumed their use of the land.  (*See id.* ¶¶ 52–58.)

In late 2016, the Tribal Council continued its casino expansion efforts and, on November 19, Tribal Council member Deston Rogers entered petitioners' land with Bishop Paiute Tribal Police and the members of the Inyo County Sheriff's Office to issue trespass and nuisance citations to petitioners.  (*See id.* ¶¶ 59–65.)  Tribal Police returned each of the next two days and issued additional citations.  (*Id.* ¶ 66.)  In addition, on November 21, 2016, the Tribal Council served a notice on petitioners to remove their personal property and fencing from the lots, as well as a notice of an unspecified proceeding before the Tribal Court the following day.  (*Id.* ¶¶ 69–70.)  On November 22, 2016, respondent Kockenmeister informed petitioners that he was granting the Tribal Council's ex parte request for a temporary protection order barring them from

entering or occupying the disputed lots.  (*Id.* ¶¶ 76–77, Ex. Q.)

On December 13, 2016, petitioners filed a petition for a writ of mandamus regarding the temporary protection order before the court of appeals but discovered that the contract between the Tribal Court and the Intertribal Court of Southern California ("ITCSC"), which served as the appellate court, had been cancelled.  (*See id.* ¶¶ 87–88.)  Because petitioners sought to resolve their property rights with respect to the issued temporary protection order as well as each of the individual trespass and nuisance actions, respondent Kockenmeister agreed to continue a previously scheduled December 20, 2016 hearing until the appellate court could be convened.  (*Id.* ¶ 92.)  Respondent Kockenmeister further extended the provisions of the temporary protection order until March 21, 2017, around the time construction on the casino expansion is expected to begin.  (*Id.* ¶¶ 93–94.)

On December 27, 2016, petitioners commenced this action by filing a petition for writ of habeas corpus.  (Doc. No. 1.)  Therein, petitioners allege four claims under the Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301–1303: (1) unlawful restraint on personal liberty in violation of due process, (2) unlawful restraint on personal liberty in violation of equal protection, (3) unlawful taking of property, and (3) deprivation of rights to assembly and speech.  On December 29, 2016, petitioners filed the instant ex parte application for emergency injunctive relief.  (Doc. No. 6.)  Specifically, petitioners ask that this court enjoin respondents from: (1) enforcing the temporary protection order and (2) commencing any construction of the proposed casino expansion.

## LEGAL STANDARD

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008));

*see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (en banc)).[1] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

A temporary restraining order may be issued without notice to the adverse party or its attorney only if

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1); *see also* Local Rule 231(a) ("Except in the most *extraordinary of circumstances*, no temporary restraining order shall be granted in the absence of actual notice to the affected party and/or counsel, by telephone or other means, or a sufficient showing of efforts made to provide notice." (emphasis added)). As the Supreme Court has noted, an ex parte temporary restraining order is justified in very limited circumstances:

> The stringent restrictions imposed . . . by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken

---

[1] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

> before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974) (internal citation omitted).

## DISCUSSION

Here, petitioners have failed to meet their burden under Federal Rule of Civil Procedure 65(b)(1) and therefore have not established that they are entitled to the extraordinary relief requested. First, petitioners have not shown that the potential harm they face is so immediate to justify issuing a temporary restraining order without notice and an opportunity to be heard. As petitioners allege, they removed their livestock, fencing, and other property, and have stayed off of the disputed property since the Tribal Court issued its temporary protection order on November 22, 2016. (*See* Doc. No. 1 ¶ 86.) Apart from this restriction, petitioners have neither alleged nor stated in a sworn affidavit any facts to suggest that they face a risk of immediate and irreparable injury in the time that it would take for the opposition parties to be given notice and an opportunity to be heard. Moreover, petitioners have made no showing that potential construction of the proposed casino expansion, its commencement still months away, justifies action by this court without a hearing. Thus, this court is unable to find the extraordinary circumstances necessary to justify the issuance of an ex parte temporary restraining order.

Second, petitioners' counsel concedes he has not undertaken any efforts to give the respondent parties notice of petitioners' request for a temporary restraining order. (Doc. No. 6-3 at 4.) In his declaration, petitioners' counsel explains he "do[es] not believe that the Tribal Council, the Court or Tribal Judge Kockenmeister, as shown by their actions to date will agree to a temporary restraining order prior to the March 21, 2017 hearing date when construction is underway." (*Id.* at 3.) Counsel's explanation for his failure to notify the respondents is insufficient: the unlikeliness of respondents to agree to a stipulated temporary restraining order is no justification for a refusal or provide notice of petitioner's application completely.

/////

**CONCLUSION**

For the reasons set forth above, petitioners' ex parte application for a temporary restraining order (Doc. No. 6) is denied.[2]

IT IS SO ORDERED.

Dated: **January 3, 2017**

*/s/ Dale A. Drozd*
UNITED STATES DISTRICT JUDGE

---

[2] Of course, plaintiffs are free to pursue preliminary injunctive relief by way of properly noticed motion.