UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON NAPOLES, LAURINE NAPOLES, RICK NAPOLES, JAMES NAPOLES, MARK NAPOLES, DEBRA WILLIAMS, and WADE WILLIAMS,<br><br>Petitioners,<br><br>v.<br><br>DESTIN ROGERS, JEFF ROMERO, BRIAN PONCHO, EARLEEN WILLIAMS, and WILLIAM BILL VEGA, in their individual and official capacities as representative of the Bishop Paiute Tribal Council; BISHOP PAIUTE TRIBAL COUNCIL; and Tribal Court Judge BILL KOCKENMEISTER, in his individual official capacity,<br><br>Respondents. | No. 16-cv-01933-DAD-JLT<br><br>ORDER GRANTING MOTIONS TO DISMISS, DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING REQUEST TO STAY<br><br>(Doc. Nos. 18, 19, 20, 24, 30) |

On December 27, 2016, petitioners in this action filed a petition for writ of habeas corpus pursuant to the Indian Civil Rights Act, 25 U.S.C. § 1303,. (Doc. No. 1.) On January 28, 2017, they filed an amended petition which is now the operative pleading in this case. (Doc. No. 10.) On May 5, 2017, respondents Poncho, Rogers, Romero, Vega, and Williams (collectively, the "Tribal Council respondents") and respondent Kockenmeister, a tribal court judge, separately moved to dismiss the amended petition. (Doc. Nos. 19, 20.) Following the filing of oppositions, replies, objections and a motion to strike, oral argument on the motions to dismiss was heard by

the court on June 20, 2017. Attorneys Andrea Seielstad and Jack Duran appeared at that hearing on behalf of petitioners, attorney Anna Kimber appeared on behalf of the Tribal Council respondents, and attorney Michael Vinding appeared on behalf of respondent Kockenmeister. For the reasons that follow, respondents' motions to dismiss will be granted.

**BACKGROUND**

At the core of this case is an intra-tribal dispute regarding the ownership of certain parcels of land on the Bishop Paiute reservation located in eastern California. The amended petition alleges petitioners were unlawfully detained by respondents when they were denied access to their family land and were cited for trespass when attempting to enter the disputed land.[1] Petitioners are all descendants of Ida Warlie, who purportedly received an assignment of eleven lots on the Bishop Paiute reservation in 1941, in exchange for relinquishing possession of other land in Inyo County. These lots were purportedly then assigned to her descendants, petitioners here, following her death. According to petitioners, a land assignment ordinance enacted by the members of the Bishop, Big Pine, and Lone Pine Reservations in 1962 validated all prior land assignments, including Ms. Warlie's. This ordinance was enacted by the Owens Valley Board of Trustees, which governs a number of tribes now living in the Owens Valley of California, including those on the Bishop Paiute reservation.

According to petitioners, the Bishop Paiute Tribal Council was constituted after Ms. Warlie's original assignment of these lots in 1941, and has only limited powers that do not include the ability to transfer, rescind, or otherwise interfere with the land grants. Nevertheless, sometime around 2006, the Tribal Council allegedly seized certain blocks of the land previously granted to Ms. Warlie—now owned by petitioners here—for the purpose of expanding a casino, adding parking, and constructing a hotel. In July 2007, the Owens Valley Board of Trustees apparently cancelled an assignment of land made to Karen Gail Manuelito, a descendant of Ms. Warlie through whom petitioners Ron Napoles, James Napoles, and Wade Williams claim they

---

[1] These background facts are largely undisputed by the parties, and are taken as true for purposes of resolving the pending motions to dismiss. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (noting a facial attack on jurisdiction under Rule 12(b)(1) confines the inquiry to the allegations in the complaint).

received their land assignment. In May 2013, the chairman of the Owens Valley Board of Trustees informed petitioners that surveyors would be establishing boundaries and fencing for expanded casino parking on the land. Petitioners denied the surveyors access to the land and were then issued the first of a number of trespass citations.

These trespass citations have been the subject of extensive litigation in the tribal courts and form the basis for this federal habeas petition. Specifically, respondent tribal court judge Kockenmeister held an evidentiary hearing with respect to trespass citations issued to petitioners in 2013 and filed a decision in June 2014, affirming the citations. Subsequently, the tribal appellate court reversed this decision and remanded the matter back to the tribal court for further fact-finding. Thereafter, the Tribal Council respondents moved to dismiss the trespass citations and they were dismissed with prejudice in October 2016. Petitioners believe this dismissal by the tribal court of the trespass citations originally issued in 2013 precludes the parties from re-litigating the question of whether petitioners trespassed on the land in question and, therefore, serves as a determination that they are the rightful owners of the disputed land parcels.

However, in September 2016, shortly prior to the dismissal of the citations issued in 2013, the Tribal Council respondents published a notice concerning the planned casino and hotel expansion, which they anticipated would start in March 2017. In November 2016, the Tribal Council respondents also issued a press release indicating they believed the dismissal of the earlier trespass citations did not dictate the outcome of any future proceedings. Indeed, a few days later, the Tribal Council respondents caused the tribal police and officers from the Inyo County Sheriff's Office to issue new trespass and nuisance citations to petitioners. The petitioners contend that numerous other acts of aggression on the part of the Tribal Council respondents occurred around this time, including: (1) petitioners being threatened with having their livestock and buildings destroyed; (2) the service of the trespass and nuisance citations on them being conducted in such a way as to cause embarrassment and intimidation; (3) certain petitioners being suspended without pay from their jobs with the tribe in retaliation; and (4) one petitioner ultimately being fired in retaliation.

/////

According to petitioners, on November 22, 2016, respondent tribal court judge Kockenmeister issued an *ex parte* temporary restraining order preventing petitioners from entering the disputed land, purportedly under the federal Violence Against Women Act ("VAWA").[2] When petitioners filed a writ of mandamus with the tribal appellate court in mid-December 2016, they were informed the Tribal Council respondents had cancelled the tribal appellate court's contract.[3] Petitioners then filed this action in the federal court.

Since the filing of the petition pending before this court, proceedings remain ongoing in the tribal courts. Respondent tribal court judge Kockenmeister dismissed the round of citations issued to petitioners in November 2016 and vacated his November 22, 2016 temporary restraining order on March 21, 2017. (Doc. No. 18 at 3.) Thereafter, however, petitioners were cited for trespassing onto the disputed property on April 1, 2017, April 2, 2017, and April 18, 2017. (*Id.* at 2–3.) It is unclear what the status of these more recently issued citations is in the tribal courts. Petitioners also apparently sought to have the tribal court reopen the 2013 trespass citations following the voluntary dismissal of those citations. Respondent tribal court judge Kockenmeister declined to do so and petitioners thereafter appealed that decision to the newly-reconstituted tribal appellate court at some point after May 5, 2017.[4] According to respondents, that appeal was dismissed by petitioners on June 5, 2017. (Doc. No. 28.) In addition, respondents represent that the citations issued to petitioners are purely civil in nature, and that petitioners can only be fined and not incarcerated pursuant to those citations.

On May 5, 2017, the same day petitioners moved to stay these proceedings, respondents moved to dismiss the petition for habeas relief now pending before this court,. (Doc. Nos. 18, 19,

---

[2] There are no allegations in petitioners' first amended petition explaining whether or how the VAWA is related to this case. Respondents' counsel suggested at oral argument on the pending motions that this reference may have been included merely because the tribal court utilized a form order.

[3] It appears the Bishop Paiute tribe contracts with the Intra-Tribal Court of Southern California for an appellate court, and does not have its own appellate court.

[4] Petitioners filed a request to stay the proceedings before this court on May 5, 2017, pending resolution of the case or cases before the Tribal Court. (Doc. No. 18.)

4

20.) Oppositions to the motion to dismiss were filed on June 5, 2017. (Doc. Nos. 25, 26.)[5] Respondents replied on June 13, 2017. (Doc. Nos. 32, 34.) A hearing on the motions was held on June 20, 2017. For the reasons set forth below, the court will grant respondents' motions to dismiss.

## LEGAL STANDARD

Jurisdiction over this action is premised upon 25 U.S.C. § 1303, which states that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." This provision is part of Title I of the Indian Civil Rights Act of 1968 ("ICRA"). *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 51 (1978); *Tavares v. Whitehouse*, 851 F.3d 863, 870 (9th Cir. 2017). The ICRA's accompanying provisions have been held not to imply a cause of action against tribal leaders, and therefore the habeas provision is the sole cause of action contemplated by the statute. *Santa Clara Pueblo*, 436 U.S. at 60–62; *Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe*, 634 F. 2d 474, 476 (9th Cir. 1980). Thus, under § 1303 federal courts this statute federal courts are authorized only to address properly filed applications for habeas relief and are not granted general jurisdiction to consider appeals from the decisions of tribal courts addressing other matters. *See Jeffredo v. Macarro*, 599 F.3d 913, 915 (9th Cir. 2010); *see also Tavares*, 851 F.3d at 876; *Alto v. Black*, 738 F.3d 1111, 1122 (9th Cir. 2013) ("[W]e have regularly declined to exercise jurisdiction over cases in which individuals are seeking an order mandating BIA involvement in tribal enrollment decisions.") Of course, physical custody is the prototypical form of detention contemplated to be challenged in a habeas action. However, just as with the "in custody" requirement of other habeas statutes, detention within the meaning of § 1303 is

---

[5] Rather than respond separately to the motions to dismiss, petitioners elected to combine their oppositions and divide them by argument, resulting in one opposition exceeding the page limit imposed by this court's standing order. (*See* Doc. No. 26.) Three days after their filing of the over-sized brief, petitioners filed a request to exceed the page limit. (Doc. No. 30.) Respondents opposed this request on June 12, 2017, requesting that the court strike all of petitioners' opposition briefs and refuse to consider them. (Doc. No. 31.) Because the court finds that respondents were not prejudiced in any way, petitioners' request to exceed the page limit will be granted. The court has considered all briefs submitted as well as the oral arguments advanced by counsel in rendering this decision.

5

somewhat more expansive than merely physical custody. *See Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 893–895 (2d. Cir. 1996) (requiring the petitioners to identify only "severe restraints on their liberty"). The Ninth Circuit, however, has recently interpreted the "detention" requirement under § 1303 in a more restrictive manner than the "in custody" requirement found in other federal habeas statutes. *See Tavares v. Whitehouse*, 851 F.3d 863, 876–77 (9th Cir. 2017) ("We view Congress's choice of 'detention' rather than 'custody' in § 1303 as a meaningful restriction on the scope of habeas jurisdiction under the ICRA."); *see also id* at 871–73 ("At the time Congress enacted the ICRA, 'detention' was generally understood to have a meaning distinct from and, indeed, narrower than 'custody.'"); *see also Jeffredo*, 599 F.3d at 918; *Moore v. Nelson*, 270 F.3d 789, 791 (9th Cir. 2001) ("There is no reason to conclude that the requirement of 'detention' set forth in the Indian Civil Rights Act § 1303 is any more lenient than the requirement of 'custody' set forth in the other federal habeas statutes.").

**ANALYSIS**

Respondents move to dismiss the pending petition, arguing that petitioners are not subject to "detention" within the meaning of 25 U.S.C. § 1303. (Doc. No. 19 at 13–14; Doc. No. 20-1 at 14–15.) Petitioners argue at great length that they are in fact subject to "detention" as a result of the issuance of the citations within the meaning of that statute. (Doc. No. 26 at 13–38.) In this regard, petitioners argue that physical custody is not required for a person to be detained and they need only be subject to a "severe actual or potential restraint on liberty." According to petitioners, they are subject to such a restraint on their liberty because the tribal court may continue to fine them for trespassing on the disputed land which they claim is rightfully theirs. Petitioners contend that this is tantamount to their partial permanent banishment, in the sense that they are permanently banished from the land they claim belongs to them.[6] This contention is set

---

[6] Petitioners also assert that the exercise of habeas jurisdiction by this federal court is proper under a "judicial control and restraint" theory, because the tribal court previously imposed fines and a temporary protective order against them even though subsequently vacated or dismissed. (Doc. No. 26 at 18–20.) Petitioners point to the decision in *Dry v. CFR Court of Indian Offense for Choctaw Nation*, 168 F.3d 1207 (10th Cir. 1999) as establishing this "judicial control and restraint" theory of jurisdiction. The court finds petitioners' reliance on the decision in *Dry* to be misplaced. In that case, the Tenth Circuit sought to determine whether the district court had a

forth in the amended petition itself in which petitioners allege:

> A restraint tantamount to custody exists in the instant case because the Respondents decided to forcibly remove the Petitioners and their belongings, including their cattle, from their lands forever, and there is no legal authority that allows the Respondents to do so.

(Doc. No. 26 at 21.)

Two foundational principles guide this court's application of the statute: the concepts of "tribal sovereignty and congressional primacy in Indian affairs." *Tavares*, 851 F.3d at 869. Because of these principles, federal courts are to "refrain from interpreting federal statutes in a way that limits tribal autonomy unless there are 'clear indications' that Congress intended to do so." *Id.* (quoting *Santa Clara Pueblo*, 436 U.S. at 60); *see also* Jeffredo, 599 F.3d at 918 ("Given the often vast gulf between tribal traditions and those with which federal courts are more intimately familiar, the judiciary should not rush to create causes of action that would intrude on these delicate matters.") (quoting *Santa Clara Pueblo*, 436 U.S. at 72 n. 32). The ICRA, in particular was designed to serve two competing interests, namely (1) the "objective of strengthening the position of individual tribal members vis-à-vis the tribe"; and (2) promoting "the well-established federal 'policy of furthering Indian self-government.'" *Santa Clara Pueblo*, 436 U.S. at 62 (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)); *see also Tavares*, 851 F.3d at 870.

With these principles in mind, the court now turns to whether the petitioners in this case have been subject to "detention" within the meaning of § 1303. Consistent with the conclusion that "detention" in this context is more restrictive than the "in custody" requirement of other habeas statutes, the Ninth Circuit has concluded that the following do not constitute a detention within the meaning of § 1303: imposition of fines, *Moore*, 270 F.3d at 791; denial of access to various facilities on a reservation, *Jeffredo*, 599 F.3d at 918–19; denial of quarterly monetary distributions, *Tavares*, 851 F.3d at 870; and temporary (two to ten year) exclusion from all

---

jurisdiction under 28 U.S.C. § 2241. 168 F.3d at 1208. That statute is not at issue here. Indeed, § 2241 uses the language of "in custody" as opposed to "detention," a distinction the Ninth Circuit has now found to be meaningful. *See Tavares*, 851 F.3d at 871–73.

reservation lands, *id.* at 878. District courts within the Ninth Circuit have similarly held that the following acts are insufficient to comprise a detention within the meaning of the statute: (1) being prevented from running for a tribal council member seat, *Lewis v. White Mountain Apache Tribe*, No. CV-12-8073-PCT-SRB (DKD), 2013 WL 510111, at *6 (D. Ariz. Jan. 24, 2013); (2) being prevented from reentering the reservation when the petitioner is a non-member of the tribe, *Liska v. Macarro*, No. 08-CV-1872IEG (POR), 2009 WL 2424293, at *7–8 (S.D. Cal. Aug. 5, 2009); (3) tribal eviction proceedings, *Quitiquit v. Robinson Rancheria Citizens Bus. Council*, No. C 11-0983 PJH, 2011 WL 2607172, at *5 (N.D. Cal. July 1, 2011); (4) situations where disenrollment from tribal membership did not affect the petitioners' geographic movement, *Quair v. Sisco*, No. 1:02-cv-5891 DFL, 2007 WL 1490571, at *3–4 (E.D. Cal. May 21, 2007); and (5) being permanently banished from a reservation pursuant to a civil proceeding, *Alire v. Jackson*, 65 F. Supp. 2d 1124, 1127–28 (D. Ore. 1999).[7]

As noted above, the Ninth Circuit has recently stated that the meaning of "detention" as it is used in § 1303 is much narrower than that espoused by petitioners here. In *Tavares*, the court explained why Congress's use of the term "detention" was to be understood differently than the phrase "in custody" used in other federal habeas statutes:

> Specifically, "detention" was commonly defined to require physical confinement. See, e.g., *Preiser v. Rodriguez*, 411 U.S. 475, 484–85, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (equating "detention" and "physical confinement"); *see also* Ballentine's Law Dictionary 343 (3d ed. 1969) (defining "detention" as "[h]olding one arrested on a charge of crime"). By contrast, "custody" had a more fluid definition: while it meant "physical control of the person," it did not require physical confinement or imprisonment. *Id.* at 300. Instead, a person was in custody for habeas purposes if there was "restraint of [that] person by another [such] that the latter can produce the body of the former at a hearing as directed by writ or order." *Id.* In other words, at the time of the ICRA's enactment, detention was understood as a subset of custody.

851 F.3d at 871.[8]

---

[7] The Ninth Circuit in *Tavares* declined to decide whether § 1303 applies only to detentions resulting from criminal proceedings. 851 F.3d at 873 n.12.

[8] The legislative history of the statute indicated Congress was predominantly concerned with the administration of criminal justice by Native American tribes. 851 F.3d at 873.

In arguing for a broader definition of "detention" under § 1303, petitioners rely primarily upon the Second Circuit's decision in *Poodry*. In that case, the court concluded that complete and permanent disenrollment from a tribe and banishment from a reservation could constitute such a severe punishment that it would qualify as a "detention" under § 1303 and thus be susceptible to challenge by way of habeas petition in federal court under that provision. 85 F.3d at 895–97 (analogizing banishment and tribal disenrollment to denaturalization and denationalization punishments). However, following the decision in *Poodry* the Ninth Circuit has recognized both that the Second Circuit itself has limited its reach and that, at least in this circuit, the only punishment short of physical confinement that could potentially rise to the level of detention as required by § 1303 is permanent banishment. *Tavares*, 851 F.3d at 875–76 ("Unlike the Second Circuit, we distinguished between disenrollment and banishment, and recognized that there is no federal habeas jurisdiction over tribal membership disputes.").[9] While the Ninth Circuit had earlier suggested agreement with the decision in *Poodry* to the extent it found that § 1303 requires "a severe actual or potential restraint on liberty," *Jeffredo*, 599 F.3d at 919 (quoting *Poodry*, 85 F.3d at 880), the decision in *Tavares* now makes it abundantly clear that any extension of "detention" under § 1303 beyond actual physical custody must be narrowly construed by courts of this circuit. Indeed, the banishment at issue in *Tavares* was found insufficient to constitute detention—despite the fact that it barred the petitioners from entering *any* tribal land, including their own homes—because it was only temporary, lasting for ten years for some of the petitioners and two years for others. *Tavares*, 841 F.3d at 867–68.

Here, petitioners argue they have been "permanently banished" from their land because they risk being issued additional citations if they reenter the property under dispute, and that this is sufficient to constitute "detention" under § 1303 under the holding in *Tavares*. The court takes as true that petitioners have been cited previously for trespass, though many of these disputes

---

[9] Notably, the Ninth Circuit did not affirmatively hold permanent banishment qualified as a detention under § 1303; it merely declined to entirely foreclose that possibility. *Tavares*, 851 F.3d at 875 ("[W]e do not need to decide whether to adopt *Poodry*'s conclusion that tribal banishment orders amount to 'detention' under § 1303, because even under *Poodry*'s logic, the Second Circuit limited habeas jurisdiction only to permanent banishment orders, not temporary exclusion orders like those in this case.").

9

have been resolved in petitioners' favor in the tribal courts, and that they received renewed trespass citations as recently as April of this year. However, plaintiffs are not currently detained, have never been in physical custody, and cannot face such confinement as a result of the issuance of these citations. Even if petitioners' complaints of foul play may have merit, their allegations are nonetheless simply insufficient to support a finding that a "detention" has occurred within the meaning of § 1303. *See Tavares*, 851 F.3d at 875–76 (suggesting that, absent physical custody, only permanent banishment could satisfy detention requirement); *Jeffredo*, 599 F.3d at 918–19 (denial of access to various facilities on reservation is not detention); *Moore*, 270 F.3d at 791 (fines do not constitute detention); *Quitiquit*, 2011 WL 2607172, at *5 (tribal eviction proceedings do not constitute a detention); *see also Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Council v. Lac Vieux Desert Band of Lake Superior Indians Tribal Court*, No. 2-10-cv-223, 2010 WL 3909957, at *2 (W.D. Mich. Sept. 14, 2010) (finding no jurisdiction under the ICRA where the petitioners had been temporarily detained and then released from custody). Even to the extent petitioners fear the issuance of additional trespass citations or exclusion from the disputed land, these concerns are insufficient to confer habeas jurisdiction upon this court. *Cf. Maleng v. Cook*, 490 U.S. 488, 491–93 (1989) (concluding that a petitioner is not "in custody" for purposes of a federal habeas statute, 28 U.S.C. § 2241, after expiration of his sentence "merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes"); *Williamson v. Gregoire*, 151 F.3d 1180, 1184 (9th Cir. 1998) (Addressing a habeas petition filed pursuant to 28 U.S.C. § 2241 and observing that "[w]e do not think that the mere potential for future incarceration, without any present restraint on liberty, can satisfy the 'in custody' requirement.").

Finally, even under the decision in *Poodry*, petitioners' argument regarding partial permanent banishment—that they have been permanently banished from their own lands—does not support their claim that they have been detained. In *Poodry*, the Second Circuit found permanent banishment and disenrollment sufficient to constitute detention because it analogized such actions to the stripping of citizenship in denaturalization and denationalization proceedings. 85 F.3d at 895–96. That is quite dissimilar from what is alleged by petitioners here, which more

10

closely resembles a takings claim than a denaturalization or denationalization. Petitioners cite no authority, and the court has identified none, suggesting that § 1303 gives federal courts sitting in habeas the jurisdiction to resolve intra-tribal land ownership disputes.

**CONCLUSION**

Because the court concludes that petitioners have not been subjected to "detention" within the meaning of § 1303, it lacks jurisdiction over this habeas action.[10] Respondents' motions to dismiss the pending petition for a writ of habeas corpus (Doc. Nos. 19, 20) are granted, and the writ of habeas corpus is dismissed.[11] Petitioner's motion to strike certain declarations (Doc. No. 24) and request for stay (Doc. No. 18) are denied as having been rendered moot. Finally, the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **July 7, 2017**

_____
UNITED STATES DISTRICT JUDGE

---

[10] Given this conclusion, the court need not reach respondents' arguments regarding exhaustion and immunity.

[11] No certificate of appealability ("COA") need be issued here. The requirement to obtain a COA is imposed by statute. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000). The statute only requires COAs for final orders in habeas corpus proceedings arising "out of process issued by a State court" or from final orders in proceedings under 28 U.S.C. § 2255. 28 U.S.C. § 2253. This action involves neither.